**Martin Reynolds STERRETT, Appellant–Respondent,**

v.

**Janet L. (Sterrett) HARTZELL, Appellee–Petitioner.**

**No. 49A02–9404–CV–236.[1]**

Court of Appeals of Indiana, First District.

Sept. 19, 1994.

1. This case was diverted to this office on August 29, 1994, by direction of the Chief Judge.

E. Davis Coots, Coots, Henke & Wheeler, Carmel, for appellant.

BAKER, Judge.

Today we consider the following question:

Upon a child's emancipation, may the non-custodial parent ever reduce child support payments without seeking modification of the support order? We decide that certain circumstances may exist that permit such reduction. Appellant-respondent Martin Reynolds Sterrett contests the trial court's modification of child support and order for back support.

## FACTS

The Sterretts were divorced on August 7, 1978, at which time Martin was ordered to pay child support for the parties' three minor children. The child support order was modified in 1986 and 1987. Pursuant to the parties' agreement, the 1987 modification provided that total support for the children was $67.00 per week per child and that Martin was responsible for 69%. The 1987 order further provided that "So long as the three children are dependents of the parties, and not emancipated, [Martin]'s portion of $138.69 per week shall be paid by [him] to [Janet].[2] As each child becomes emancipated, the child support shall be reduced accordingly." Record at 17. In 1989, the parties were back in court charging that each was in contempt. The court determined that both were in contempt, that the oldest child was not emancipated, and that Martin should continue to pay $138.69 weekly.

On May 19, 1990, the oldest son Martin Jr. moved out of Janet's home, married and began supporting himself. The second child, Jennifer, had moved out of the mother's home in August 1989, resided with Martin at two different periods for a total of 32 months, and then moved in with her boyfriend when she became pregnant. She and her child later returned to live with Janet after Jennifer was twenty-one years old. Believing these two children to be emancipated, Martin reduced his child support payments to $50 per week beginning January 2, 1990, for the youngest child, Patrick.[3] Janet did not object to the reduction for three years. In 1993, she filed another petition for support modification and for contempt. Besides seeking a determination regarding payment of Patrick's college expenses, she also alleged that Martin was in arrears due to his unilateral reduction of child support.

The trial court held that its 1989 order created an indivisible, in gross child support order. Thus, the court found that the entire amount of $138.69 was due to be paid each week and that Martin owed an arrearage of $19,740. The court declared that the two older children were emancipated and modified the child support prospectively to provide solely for Patrick. The court ordered Martin to pay $150 weekly to be abated 50% when Patrick was not living with Janet. In addition, Martin was responsible to pay 69% of Patrick's college fees for the 1993–94 school year, excluding his personal expenses and transportation, and 61% for the next three years. Patrick's college expenses included flying fees for his enrollment in the

---

2. The mathematical calculation to determine Martin's amount of support for three children is:

$67 × 3 (children) = $201 total support
$201 × 69% = $138.69 Martin's portion

3. Martin decreased his support to $50 for Patrick by the following method:

$67 × 2 (emancipated children) = $134
$201 - 134 = $67 total support for one child
$67 × 69% = $46.23 Martin's portion

professional pilot program at Indiana State University.

Martin appeals the finding of arrearage, the order that he pay 69% of Patrick's flying fees for 1993–94, and the order that he pay weekly child support in addition to the 61% of Patrick's educational expenses after 1994.

## DISCUSSION AND DECISION

### I. Arrearage

First, we acknowledge that Janet has failed to file an appellee's brief, and therefore, Martin need show only prima facie reversible error to be successful. *See Rieddle v. Buckner* (1994), Ind.App., 629 N.E.2d 860, 863. We may reverse the trial court's decision if error appears on the face of the argument. *Id.*

■ Martin contends that the trial court's finding of an arrearage from May 19, 1990 to December 9, 1993 was erroneous. Specifically, Martin challenges the trial court's determination that its prior support order constituted an indivisible, in gross support order. An indivisible, in gross support order refers to the situation where a parent is ordered to pay a specified sum of undivided support for more than one child. *See Isler v. Isler* (1981), Ind.App., 422 N.E.2d 416, 419, *reh'g denied*, 425 N.E.2d 667 (citing to a support order in gross for multiple children without any alternate provisions or designations of amounts per child); *Ross v. Ross* (1979), Ind.App., 397 N.E.2d 1066, 1070 (referring to lump sum support order for several children).

Under this type of order, the parent must pay the total support amount until the support payments are modified by court order or all of the children are emancipated or reach the age of twenty-one years. IND.CODE § 31–1–11.5–12(d); *Kirchoff v. Kirchoff* (1993), Ind.App., 619 N.E.2d 592, 596. Although modification due to emancipation can be effective as of the date of the emancipation under *Donegan v. Donegan* (1992), Ind., 605 N.E.2d 132, 133, if one or more unemancipated children are also covered by the support order, the obligated parent's duty to support the remaining minor children according to the terms of the original support order continues, even after emancipation of one or more of the children until the parent's duty to support the minor children is modified by the trial court. *Kirchoff*, 619 N.E.2d at 596. This rule is adhered to because it is possible that a lump sum support order could include a different amount of support for each child depending on the particular needs of each child. *Kaplon v. Harris* (1991), Ind., 567 N.E.2d 1130, 1132.

■ Reviewing the 1987 and 1989 support orders, we find that the trial court erred in applying the above-stated precedent to this particular case. The record shows that the 1989 order merely reiterated the 1987 order. Therefore, the 1987 order contains the critical language that we must examine to determine whether it was an indivisible, in gross support order. The 1987 order first specified that the weekly support for each child was $67. It also directed that "as each child becomes emancipated, the child support shall be reduced accordingly." Record at 17. The support order did not provide an undivided amount for the three children, rather the support order provisions designated an amount per child. Hence, the order does not fall within the scope of an in gross order.

The 1987 order commanded that the amount of support was to be decreased accordingly upon the emancipation of each child. Because we are applying the prima facie error standard since Janet has not benefitted us with arguments to the contrary, the reasonable inference is that the child support was automatically reduced by $67 upon each child's emancipation. Thus, Martin's reduction of support of his portion of 69% after May 19, 1990, complied with the 1987 order. The trial court erred in finding an arrearage from May 19, 1990 to the hearing date. Martin was in arrears only from January 2, 1990 to May 19, 1990, due to his reduced support before the children were emancipated. We remand with instructions for the trial court to recalculate the amount of arrearage in accordance with this opinion.

■ Martin also argues that the trial court miscalculated the amount of the arrearage because it failed to reflect his total payments for 1989. The trial court determined that

the arrearage was $19,740 as of December 9, 1993. The court apparently relied upon Janet's computation of the arrearage in Exhibit 4. Record at 88. Her figures compute the support paid and owed from April 11, 1989 to December 9, 1993. Janet showed that Martin paid $5,659.09 in 1989. Martin contends that the certified record of the clerk's office reflecting his support payments should be used instead of Janet's figures. The clerk's record reported that Martin paid $7,561.90 for 1989. The clerk's record, though, only reflects payments made and not any of the arrearage. Although the clerk's record reported that Martin paid $7,561.90 for 1989, that amount was calculated for the entire year; whereas the $5,659.09 that Janet showed as paid for 1989 was for only 37 weeks of the year. Thus, the difference between Janet's figures and the clerk's office can be attributed to the different time period covered and also for the outstanding arrearage prior to 1989. Martin does not present any other evidence refuting this rationalization for the difference. We cannot say that the court's reliance upon Janet's calculation is clearly erroneous. *See* Ind.Trial Rule 52(A).

■ Next, Martin contends that the court failed to give him credit for child support paid for 32 months when Jennifer resided with him. *See* Record at 100, Ex. A, p. 2. Martin concedes that the general rule is that a parent is not entitled to credit for payments not conforming to the support order. *See Kaplon*, 567 N.E.2d at 1133. Martin urges that he falls within the exception to the rule that when the noncustodial parent takes custody of a child with the other parent's consent for an extended period of time, it is equitable to credit the noncustodial parent for support payments made. *O'Neil v. O'Neil* (1989), Ind., 535 N.E.2d 523, 524 (quoting *Isler*, 425 N.E.2d at 670); *see also Kaplon*, 567 N.E.2d at 1133 (recognizing exception). We agree that Martin has established prima facie error by the trial court's failure to credit him in accordance with this exception. On remand, we instruct the court to adjust the arrearage by the credit due in light of this exception.

## II. Pilot Expenses

Martin claims that the trial court's order that he pay a proportional share of Patrick's flying training expenses is excessive and unreasonable based upon the additional requirement that he also pay a portion of Patrick's basic college expenses and upon Martin's ability to pay. Martin complains that because the piloting program is not necessary for graduation and is a choice beyond the basic curriculum at Indiana State University, it is excessive and unreasonable support. Martin does not dispute the obligation to pay for Patrick's basic educational expenses.

■ The decision to award sums for a child's higher education is a matter within the trial court's discretion. *Boruff v. Boruff* (1992), Ind.App., 602 N.E.2d 180, 182. On review, we will not reverse the award absent a clear showing of an abuse of discretion. *Id.* We observe that this standard of appellate review differs from the standard applied when the apportionment of college expenses is at issue. *Carr v. Carr* (1992), Ind., 600 N.E.2d 943, 945. For challenges of apportionment, the clearly erroneous standard governs. *Id.*

■ To decide whether to order a parent to pay for a child's educational expenses, the trial court must examine the facts and circumstances of each case and determine if the expenses are reasonable and necessary. *DeMichieli v. DeMichieli* (1992), Ind.App., 585 N.E.2d 297, 303. Higher education expense awards depend upon the aptitude and ability of the child and the means of the parties. *Carr*, 600 N.E.2d at 945; IND.CODE § 31–1–11.5–12(b)(1).

■ The record indicates that Patrick's flight fees amounted to $1,142, in addition to his college tuition, books, and student fees, of which Martin was responsible for 69% for the 1993–94 school year and 61% thereafter. While it is true that a child's talent or interest in a particular avocation does not necessitate support by the noncustodial parent of such expenses, we cannot say the award was unreasonable here. *See Howard v. Reeck* (1982), Ind.App., 439 N.E.2d 727, 730. Martin appears to be perturbed more that Patrick did not consult with him before forego-

ing a football scholarship from a different college in order to enroll in the pilot program at Indiana State University. He fails to present evidence that the trial court abused its discretion in ordering him to pay a portion of Patrick's pilot program expenses. *See DeMichieli,* 585 N.E.2d at 304 (no abuse to order payment for expenses for dental assistant school); *Howard,* 439 N.E.2d at 730 (court's refusal to award equitation expenses was not abuse).

### III. Weekly Child Support

Martin also disputes the reasonableness of the order of weekly child support in addition to the payment of 61% of Patrick's educational expenses after 1994. He maintains that his total yearly support obligation is unreasonable because it exceeds 20% of his annual gross income. Thus, we review whether the support order is clearly erroneous. *Carr,* 600 N.E.2d at 945.

Martin seeks to be relieved of weekly child support during the periods that Patrick is away from Janet's home. The trial court must consider full or partial abatement of a parent's basic child support obligation where the parent is also obligated to pay a portion of the child's college expenses in addition to child support. *In re Marriage of Tearman* (1993), Ind.App., 617 N.E.2d 974, 977; Child Supp.G. 3(E)(3), Commentary 3b. This avoids the duplication of payment for a single expense, resulting in a windfall to the custodial parent. *Id.*

Clearly, the trial court considered that weekly support payments while Patrick was at college would be partially duplicative of Martin's payment of educational expenses when it decided to abate half of the weekly support during the periods that Patrick did not reside with Janet. However, the court specifically excluded from the educational support order the estimated $1,700 for Patrick's personal needs and transportation finding that it was Janet's responsibility since Martin was paying her weekly support for Patrick. Record at 49. Thus, we cannot say that the court's refusal to fully abate weekly child support while Patrick was at college was unreasonable. The order allocating 61%

of the total support to Martin was not clearly erroneous.

### CONCLUSION

We conclude that the court's weekly support order is not clearly erroneous, and that the order to pay higher educational expenses, particularly the flying fees, was not an abuse of discretion. However, we reverse the court's decision regarding the arrearage and remand for a recalculation based upon our earlier directions.

Judgment affirmed in part, reversed in part, and remanded.

ROBERTSON and RUCKER, JJ., concur.